IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:17-cr-00406 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| -vs- | ) | |
| | ) | |
| DELAMON MARSHALL, | ) | DEFENSE SENTENCING MEMORANDUM |
| | ) | |
| Defendant, | ) | |

Now comes the Defendant, Delamon Marshall, by and through the undersigned counsel, and submits the following Memorandum for consideration by this honorable court at sentencing herein. This Memorandum addresses two issues. First, Mr. Marshall's status as an alleged Armed Career Offender. Secondly, the propriety of the government presenting evidence and witnesses regarding a March 17, 2017 shooting incident.

I. **Armed Career Offender status**

At the outset, Mr. Marshall concedes that this Court is likely bound by the Sixth Circuit precedent in *United States v. Gatson*, 776 F. 3d 405 (6th Cir. 2015) and the more recent decision in *United States v. Solomon*, 2019 U.S. App. LEXIS 10483 (6th Cir. Apr. 19, 2019) holding that Ohio convictions pursuant to R.C. 2919.25(A) are qualifying offenses for ACC purposes. Nonetheless, Mr. Marshall objects to designation as an Armed Career Offender pursuant to 18 U.S.C. § 924 (e). The government and the Pre-sentence report contend that the defendant qualifies by virtue of the following predicate convictions:

1. Armed Bank Robbery 7-23-99  Case No. 5:99CR00293 N.D. Ohio (PSR ¶63)
2. Domestic Violence (F-3) 8-2208 Summit Co. Common Pleas Case No. 2008-09-2875 (PSR ¶73)
3. Domestic Violence (F-3 Summit Co. Common Pleas Case No. 2009-03-0874 (PSR ¶75)

Mr. Marshall contends that, despite *Gatson* and *Solomon* the two Ohio domestic Violence convictions do not qualify as a "crime of violence"  In each case Mr. Marshall was convicted pursuant to Ohio Revised Code §2919.25 (A) which provides in relevant part: "**(A)** No person shall knowingly cause or attempt to cause *physical harm* to a family or household member." (emphasis added).

"Physical Harm" as used in the statute is defined as: "any injury, illness, or other physiological impairment, *regardless of its gravity or duration."* Ohio Revised Code § 2901.01(A)(3) (emphasis added).

In short, Mr. Marshall contends that the Ohio definition of physical harm is far broader than what is required to satisfy the requirement under federal law of "violent force" as required pursuant to *Johnson v. United States*, 559 U.S. 133 (2010) and pursuant to the "categorical approach" which this court must employ in making the determination whether an offense qualifies. *United States v. Mitchell,* 743 F. 3d 1054 (6th Cir. 2014).

Although Mr. Marshall acknowledges and concedes that *Solomon and Gatson* are presently controlling authority in this Circuit, he does not concede that they were decided correctly.

Mr. Marshall contends that both cases were improperly decided because they failed fully to analyze the legislative history and Ohio caselaw defining the statute. In her concurrence in *Solomon* Judge Moore opined that *Gatson* read "an assumption of force" into the Ohio statute's plain language. Judge Moore stated: "Ohio Revised Code § 2919.25 does not specify that the "physical harm" even be inflicted through force. Its plain language requires only that the perpetrator "cause or attempt to cause physical harm"; the means are not specified. Ohio Rev. Code § 2919.25.  The *Gatson* court did not proceed further in its overbreadth analysis to assess how the statute is applied in Ohio. *See e.g. Moncrieffe v. Holder,* 569 U.S. 184, 194-95 (2013)" (J. Moore, concurring ).

A review of the case law and legislative history demonstrates that Ohio's interpretation of the statute reveals that it encompasses acts that may meet the broad definition of "physical harm" but fall short of what constitutes force under Career Offender guidelines which require "violent force capable of causing physical pain or injury to another person." *Johnson v. United States,* 559 U.S. 133, 142 (2010).

In *State v. Blonski,* 125 Ohio App. 3d 103, 114 (Ohio App. Dist. 9, 12-31-1997) the Court stated: "A defendant may be found guilty of domestic violence even if the victim sustains only minor injuries, or no injury at all."  Other Courts have held that "[e]ven a minor injury, however, constitutes physical harm for purposes of the domestic violence statute." *State v. Marrero,* 2011 WL 1049294 (Ohio App. Dist. 10, 3-24-2011).

The legislative history regarding the definition of "physical harm" indicates that Ohio lawmakers intended that it include psychological damage to the victim or inflicting the person with a disease or medical condition such as pneumonia. In *State v. Roof*, 1978

WL 216430 (Ohio App. Dist. 1, 11-8-1978) the Court quoted the legislative history as follows:

> 'Physical harm to persons' is conceived as personal, physical harm including, but not limited to personal injury. In the context of tort law personal injury implies a trauma, but in the context of the criminal law a precedent trauma is not viewed as a necessary requirement before it can be held that personal harm is caused or threatened, such as when an offender deliberately, through other than traumatic means, sets out to drive his victim mad or arranges for his victim to contract pneumonia
>
> *Id.* At *2, n. 1

In *State v.Vore,* 2014-Ohio 1583 (Ohio Ct. App. Dist. 12, 4-14-14) the Court considered the "physiological impairment" component of the physical harm definition. In that case a robber handed a bank teller a demand note requesting money. No weapon was shown nor was any harm threatened. The teller testified that after reading the note she "froze". The Court found that the fact that the note caused her to freeze constituted "physiological impairment" and therefore satisfied the definition of "physical harm". Clearly such conduct could never be contemplated to be "violent force" within the meaning of *Johnson.*

Given the above, it is hard to square the *Solomon* with the decision of the Sixth Circuit in *United States v. Burris*, 912 F. 3d 386, (6th Cir. 2019) (*en banc*) which held that a portion of Ohio's Felonious Assault statute is not an ACC qualifier as it can be committed by inflicting mental and emotional harms. Thus, one could theoretically commit felonious assault without any physical act. The statute defining "physical harm" suffers from the same infirmity which was found fatal in *Burris.* Mr. Marshall contends that if the *Gatson* and *Solomon* courts had thoroughly analyzed Ohio's broad definition of "physical harm" they would have been compelled to reach the same result as *Burris.*

Therefore, because he believes that *Gatson* and *Solomon* were incorrectly decided, he here seeks to preserve this issue for further review.

Finally, Mr. Marshall contends that the Armed Career Criminal Act is void for vagueness.  Given the rapidly changing landscape in this area of law and serious debate regarding whether actions proscribed by a state statute may or may not qualify as "force" within the meaning of *Johnson*, it is hard to say that a person of average intelligence could possibly have fair notice of what activity makes them eligible for ACC status.  As such the definition of "crime of violence" as used in USSG 4B1.1(a) is void for vagueness.  In his concurring opinion in *United States v. Williams*, 927 F. 3d 427 Judge Merritt stated:

> In the last paragraph of my dissenting opinion two years ago, I pointed out what the two justices thought about this law. "Justice Breyer said the Armed Career Criminal Act creates a "time-consuming legal tangle" *Mathis,* 136 S. Ct. at 2264 (Breyer, J. dissenting).  Justice Alito agreed and referred to the analytical process simply as a "mess", *Id.,* at 2269 (Alito, dissenting)."

Mr. Marshall contends that the ACCA is void for vagueness as it does not give adequate notice of what conduct is prohibited.  "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited." *United States v. Williams,* 553 U.S. 285, 304, 128 S.Ct. 1830. (2008).

## II.  The March 17, 2017 Fatal Shooting

### a.  background

Count 2 of the Indictment herein charges that on March 17, 2017 Mr. Marshall possessed a firearm after having been convicted of the offenses listed above.  It would

appear that the government will attempt to present witnesses and evidence of the circumstances surrounding that incident. The Defendant does not contest that on that date he regrettably shot and killed the victim in that incident. However, the defendant fully expects that the government will agree and stipulate that Ohio authorities fully interviewed Mr. Marshall (who himself sustained four gunshot wounds and asserted self-defense) and after further investigating the case presented it to a Summit County, Ohio which did not charge him with any homicide offense as a result of his actions.

### b. The government should be precluded from re-litigating the March 17 incident under principles of comity and deference.

During the March 17, 2017 incident Mr. Marshall was shot four times and also returned gunfire in claimed self-defense. With assistance of counsel he provided a recorded statement to detectives. After a thorough investigation and presentation to a grand jury, Ohio declined to charge him for the shooting. It should be noted that the Ohio grand jury would have employed the lowest standard of proof in the law, that of probable cause. Even under such standard no charges were brought. Therefore, where one sovereign was in a better position to examine the facts and even employed a lower standard than this court would require, this Court should give deference to the state of Ohio and not wade into a homicide trial in the context of this sentencing hearing. Under principles of comity this court should respect the Ohio court's decision to not charge him criminally with the shooting. In *Baker v. John,* 982 P. 2d 738 the Court stated that:

"[c]omity is the principle that the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state or jurisdiction, not as a matter of obligation, but out of deference and mutual respect. The comity doctrine governs the recognition afforded by courts in the United States to judgments of foreign nations. Comity is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other."

In *Sovereign News Co. v. Falke*, 448 F. Supp. 306 (N.D. Ohio, 10-31-77) the Hon. John M. Manos of this Court in relation to state grand jury proceedings observed:

> This court concludes that: (1) state grand juries are state institutions having a legitimate state interest deciding whether formal felony criminal litigation should go forth in state court; (2) invocation of the federal judiciary's equity power against a state grand jury to suppress evidence, developed after a lengthy police investigation and presented to the state grand jury would violate the policies underlying *Douglas* and *Perez, supra*. These cases suggest that the states' judicial institutions which are designed to *initiate* state criminal litigation perform important state functions and therefore should be left undisturbed in the ordinary case.

Along with that line of reasoning Mr. Marshall contends that this Court should grant deference to the state proceedings and avoid the government invitation to re-decide facts.

### c. Due Process of law and the right to effective assistance of counsel should preclude re-litigation of the March 17 incident

Mr. Marshall contends that principles of Due Process and the right to effective assistance of counsel should preclude the government from re-litigating facts from a state court incident not charged in this case.

On August 9, 2019, the undersigned counsel was put on notice for the first time of the government's intention to call witnesses regarding the March 17, 2017 incident in the context of this sentencing hearing. These witnesses include investigating homicide detectives and police officers; scientific evidence experts and the county medical examiner. Based upon the time factor alone, counsel will have inadequate time to prepare for what will surly amount to an attempt on the part of the government to ascribe fault to Mr. Marshall for the shooting. Even if counsel did have sufficient time he may

lack the resources to go back and re-investigate and adequately prepare to rebut the government's case.  The undersigned counsel is appointed to represent Mr. Marshall in this federal case.  He had different counsel representing him in 2017 when the state case was investigated.  It is doubtful that CJA funding and reimbursement guidelines would fund the amount of work necessary for counsel to undertake to adequately prepare to defend a homicide accusation.  At a bare minimum, Mr. Marshall should be provided with Jencks materials for each of these witnesses which should minimally include grand jury testimony, if any.  Further, in preparation for their testimony in this sentencing counsel should be provided with reports or summaries of any meetings and discussions by or between prosecutors and state officials and particularly if the state officials seek to present any evidence or testimony that in any way either exceeds or contradicts their previous statements and conclusions in the state

Based upon the foregoing the undersigned counsel submits that he will be ill-prepared to rebut any presentation of witnesses or documents by the government regarding an incident nearly three years in the past and to force Mr. Marshall to defend in this regard without adequate time or resources would result in a violation of Due Process and the Sixth Amendment right to effective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).

> **d.** **The government's failure to object to the pre-sentence report calculations should preclude litigation of this issue.**

Although it has never expressly said so, it is presumed that the government seeks to litigate the March 17, 2017 incident in an effort to establish an enhancement of the guideline calculations pursuant to USSG §2K2.1(c)(1)(B) which provides "..if the

defendant used or possessed any firearm ..in connection with the commission or attempted commission of *another offense*, apply USSG §2A, Subpart 1 (Homicide), if the resulting offense is greater than that determined above." (emphasis added)

The presentence report in this case referenced the above provision and then stated:

"the defendant's conduct on March 17, 2017 was most closely related to Voluntary Manslaughter, which has a base offense level of 29.USSG §2A1.3(a).  Pursuant to 18 U.S.C. §112(a) voluntary manslaughter is the unlawful killing of a human being without malice upon a sudden quarrel or heat of passion.. **The probation officer did not use this cross reference since the offender was determined to be an Armed Career Criminal with an offense level of 34."** (PSR¶ 44) (emphasis added)

Thus, clearly, the probation officer specifically noted that they were not cross-referencing this case under USSG §2K2.1(c)(1)(B) and the ultimate sentencing calculations in this case were being based upon other grounds.  The government never objected.  Yet, they now at this late stage of the litigation attempt to apparently assert this claim, (we think) without specifically saying so and without prior notice that this would be their intention.

The presentence report objection procedure is presumably to distill the issues to be presented to the Court at sentencing.  Had the government desired to pursue this line they should have sought leave to object to the PSR and put both the Court and defense on notice and also afford the defense to object at that point.  The fact that they did not do so led counsel to believe that they were satisfied with the calculations as stated.

Based upon the foregoing, the Defendant prays that the government be precluded from calling witnesses or presenting evidence regarding the March 17, 2017 incident.

Respectfully submitted,

/s/ Robert A. Dixon

ROBERT A. DIXON (#0022466)
4403 St. Clair Avenue
Cleveland, Ohio 44103
(216) 432-1992
(216) 881-3928 facsimile
Dixonlaws@aol.com

## CERTIFICATE OF SERVICE

This document was filed via the ECF system for the U.S. District Court for the Northern District of Ohio and served upon all parties by operation of that system, this 3rd day of September, 2019.

/s/ Robert A. Dixon
ROBERT A. DIXON
Attorney for Defendant